*Kondjoua v. Barr*

# UNITED STATES COURT OF APPEALS

## FOR THE SECOND CIRCUIT

_____

August Term, 2019

Argued: August 22, 2019
Decided: May 28, 2020

Docket No. 16-296
_____

CHRYSOSTOME TSAFACK KONDJOUA,

*Petitioner,*

v.

WILLIAM P. BARR, UNITED STATES ATTORNEY GENERAL,

*Respondent.*

_____

Before:  HALL, LIVINGSTON, *Circuit Judges*, and RESTANI,[1] *Judge*.

Petitioner Chrysostome Tsafack Kondjoua, a native and citizen of Cameroon, seeks review of an order of the Board of Immigration Appeals affirming a decision of an Immigration Judge finding that Kondjoua's conviction for sexual assault in the third degree in violation of Connecticut General Statutes § 53a-72a(a)(1) is an aggravated felony crime of violence as defined in 18 U.S.C.

---

[1] Judge Jane A. Restani, of the United States Court of International Trade, sitting by designation.

§ 16(b) and ordering him removed from the United States on that ground. Subsequently, in *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), the Supreme Court held that 18 U.S.C. § 16(b), as incorporated into the Immigration and Nationality Act, was void for vagueness. We decline to remand for the agency to consider in the first instance whether Kondjoua's conviction of Connecticut third-degree sexual assault is a crime of violence under the alternative definition in 18 U.S.C. § 16(a), but rather consider that legal question de novo and hold that it categorically satisfies that definition.

Petition DENIED.

_____

TADHG DOOLEY, Wiggin and Dana LLP (Jessica Garland, Yena Lee, Law Students, Appellate Litigation Project, Yale Law School, on the brief, Benjamin M. Daniels, Wiggin and Dana LLP, on the brief), New Haven, Connecticut, *for Petitioner*.

JESSICA A. DAWGERT, Senior Litigation Counsel, Office of Immigration Litigation (Joseph H. Hunt, Assistant Attorney General, Erica B. Miles, Senior Litigation Counsel, on the brief), United States Department of Justice, Washington, D.C., *for Respondent*.

_____

PER CURIAM:

Petitioner Chrysostome Tsafack Kondjoua seeks review of a January 12, 2016 decision of the Board of Immigration Appeals ("BIA") affirming a September 14, 2015 decision of an Immigration Judge ("IJ") ordering him removed to his native Cameroon because his conviction for sexual assault in the third degree in violation of Connecticut General Statutes ("CGS") § 53a-72a(a)(1) was an

aggravated felony crime of violence as defined in 18 U.S.C. § 16(b).  Subsequently, in *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), the Supreme Court held that the definition of crime of violence in § 16(b) as incorporated into the Immigration and Nationality Act was unconstitutionally void for vagueness.  We decline to remand for the BIA to determine whether Kondjoua's conviction for Connecticut third-degree sexual assault constitutes an aggravated felony crime of violence under the alternative definition in 18 U.S.C. § 16(a) because that issue is a question of law that we decide de novo and the interpretation of a state criminal statute is not within the BIA's area of expertise.  We further hold that Kondjoua's statute of conviction, CGS § 53a-72a(a)(1), which requires use of a dangerous instrument, actual physical force or violence, or superior physical strength, necessarily includes the use or threatened use of violent force as an element, and thus categorically constitutes an aggravated felony crime of violence as defined in 18 U.S.C. § 16(a).

**BACKGROUND**

In 2010, Kondjoua, a native and citizen of Cameroon, was admitted to the United States as a lawful permanent resident.  Five years later, in 2015, he was convicted, pursuant to a guilty plea, of sexual assault in the third degree in

3

violation of CGS § 53a-72a(a)(1) and was sentenced to five years' imprisonment. Based on that conviction, the U.S. Department of Homeland Security charged Kondjoua as removable (1) under 8 U.S.C. § 1227(a)(2)(A)(iii), for having been convicted of an aggravated felony crime of violence as defined in 18 U.S.C. § 16 that carried a term of imprisonment of at least one year, pursuant to 8 U.S.C. § 1101(a)(43)(F), and (2) under 8 U.S.C. § 1227(a)(2)(A)(i), for having been convicted of a crime involving moral turpitude.

Kondjoua applied for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"), asserting political persecution in Cameroon. Following a hearing, the IJ concluded that Kondjoua's conviction was categorically an aggravated felony crime of violence as defined in 18 U.S.C. § 16(b), and that, given his sentence of five years, it was also per se a particularly serious crime, which barred him from asylum and withholding of removal. The IJ found it unnecessary, therefore, to reach the alternative basis for removability—that Kondjoua's conviction constituted a crime involving moral turpitude. The IJ denied deferral of removal under the CAT, finding that Kondjoua failed to satisfy his burden of showing a likelihood of torture in Cameroon. The BIA affirmed the IJ's decision and declined to remand for consideration of evidence submitted on

4

appeal. This petition followed.

The determination that Kondjoua was removable for having been convicted of an aggravated felony crime of violence as defined in 18 U.S.C. § 16(b) is invalid in view of the Supreme Court's holding in *Dimaya* that the definition of crime of violence in § 16(b) is void for vagueness. Accordingly, the issues before us are whether we should decide in the first instance that a conviction under CGS § 53a-72a(a)(1) falls categorically under the definition of crime of violence in § 16(a), which was not invalidated by *Dimaya*, and whether under Connecticut law such conviction requires the use or threatened use of force capable of causing pain or injury as required to satisfy § 16(a).[2]

## DISCUSSION

Our jurisdiction is limited to constitutional claims and questions of law because Kondjoua was ordered removed for an aggravated felony. *See* 8 U.S.C. §§ 1252(a)(2)(C), (D). We have jurisdiction to review the agency's legal determination that Kondjoua's conviction for third-degree sexual assault in violation of CGS § 53a-72a(a)(1) constitutes an aggravated felony crime of

---

[2] Kondjoua does not challenge the agency's denial of deferral of removal.

5

violence. *See Gertsenshteyn v. U.S. Dep't of Justice*, 544 F.3d 137, 142 (2d Cir. 2008).

Our review is de novo. *Prus v. Holder*, 660 F.3d 144, 146 (2d Cir. 2011) (per curiam).

The Immigration and Nationality Act classifies as an aggravated felony a "crime of violence" punishable by at least one year of imprisonment and defines "crime of violence" by referring to 18 U.S.C. § 16. *See* 8 U.S.C. § 1101(a)(43)(F). In turn, 18 U.S.C. § 16 defines a "crime of violence" as "(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." The agency concluded that Kondjoua's statute of conviction constituted a crime of violence under the definition in § 16(b), but the Supreme Court has since found that definition unconstitutionally void for vagueness. *See Dimaya*, 138 S. Ct. at 1215-16. As the parties recommend, we decline to remand for the agency to consider in the first instance whether CGS § 53a-72a(a)(1) categorically satisfies the alternative definition of crime of violence in § 16(a). The issue of whether a state criminal statute is a crime of violence under § 16(a) is a question of law that we decide de novo, and the interpretation of a state criminal statute is outside the

6

BIA's area of expertise. *See Banegas Gomez v. Barr*, 922 F.3d 101, 107 (2d Cir. 2019) ("[N]othing requires that we convert judicial review of agency action into a ping-pong game and remand is not required when it would be an idle and useless formality." (internal quotation marks, brackets, and ellipsis omitted)); *see also Jobson v. Ashcroft*, 326 F.3d 367, 371 (2d Cir. 2003) ("[W]e review de novo the BIA's interpretation of criminal statutes over which it has no special expertise.").

In determining whether a state conviction constitutes an aggravated felony crime of violence, we employ a categorical approach, under which "we consider the offense generically, that is to say, we examine it in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion." *United States v. Beardsley*, 691 F.3d 252, 259 (2d Cir. 2012). "Under the plain language of § 16(a), one of the elements of a crime of violence must be 'the use, attempted use, or threatened use of physical force against the person or property of another.'" *Blake v. Gonzales*, 481 F.3d 152, 156 (2d Cir. 2007) (quoting 18 U.S.C. § 16(a)). "[T]he phrase 'physical force' means *violent* force—that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010) (interpreting a provision of the Armed Career Criminal Act identical to § 16(a)); *see also Leocal v. Ashcroft*, 543 U.S.

7

1, 11 (2004) ("The ordinary meaning of th[e] term [crime of violence], combined with § 16's emphasis on the use of physical force against another person (or the risk of having to use such force in committing a crime), suggests a category of violent, active crimes . . . ."). Such force "includes the amount of force necessary to overcome a victim's resistance" and "unjust or improper force," *Stokeling v. United States*, 139 S. Ct. 544, 553 (2019) (internal quotation marks and emphasis omitted), but must be more than "the merest touching," *Johnson*, 559 U.S. at 139.

Kondjoua's statute of conviction, CGS § 53a-72a(a)(1), provides that "[a] person is guilty of sexual assault in the third degree when such person (1) compels another person to submit to sexual contact (A) by the use of force against such other person or a third person, or (B) by the threat of use of force against such other person or against a third person, which reasonably causes such other person to fear physical injury to himself or herself or a third person."[3] Connecticut defines "[u]se of force" as "(A) [u]se of a dangerous instrument; or (B) use of actual

---

[3] We find no support for Kondjoua's argument that 1975 amendments to the definitions pertaining to Connecticut's rape and sexual assault laws evinced legislative intent that sexual assault cover non-violent force. The amendments replaced the requirement that the state "prove that physical force overcame earnest resistance by the victim" with the requirement that the state prove only "the use of force or the threat of force," thus indicating that the legislature sought to eliminate the "earnest resistance" requirement placed on victims without altering the requirement to prove force. *See State v. Siering*, 35 Conn. App. 173, 181 n.6, 644 A.2d 958, 962 n.6 (1994).

physical force or violence or superior physical strength against the victim." CGS § 53a-65(7). Kondjoua admits, as he must, that by its plain language the phrase "use of . . . violence" in CGS § 53a-65(7) satisfies the crime of violence definition of § 16(a). *See Johnson*, 559 U.S. at 140. At issue then is whether the remaining phrases in CGS § 53a-65(7), "use of a dangerous instrument," use of "superior physical strength," and "use of actual physical force," as defined by Connecticut law, satisfy the definition of a crime of violence under § 16(a). We hold that they do.

We have already held that "[u]se of a dangerous instrument," as defined by Connecticut law, constitutes violent force. *Villanueva v. United States*, 893 F.3d 123, 128–29 (2d Cir. 2018). Connecticut defines "[d]angerous instrument" as "any instrument, article or substance which, under the circumstances in which it is used or attempted or threatened to be used, is capable of causing death or serious physical injury." CGS § 53a-3(7). In *Villanueva*, we considered whether use of a dangerous "substance," such as poison, constitutes "use of physical force" as required to establish a "violent felony" under the Armed Career Criminal Act ("ACCA"), which is the equivalent of a crime of violence under 18 U.S.C. § 16(a). 893 F.3d at 128, 130. We held that it did, explaining that, "[u]nder the reasoning of [*United States v.*] *Castleman*, [572 U.S. 157 (2014),] the use of a 'substance' (the

9

term in the Connecticut definition of 'dangerous instrument') constitutes use of physical force, for federal law purposes, because the relevant force is the impact of the substance on the victim, not the impact of the user on the substance." *Id.* at 129. Kondjoua attempts to distinguish this holding, arguing that *Villanueva* involved a conviction for Connecticut first-degree assault, which requires that the use of the "dangerous instrument" actually cause "serious physical injury," while Kondjoua's statute of conviction, Connecticut third-degree sexual assault, does not require physical injury but rather requires only sexual contact. Kondjoua's argument fails because, although we explicitly limited our holding in *Villanueva* to Connecticut first-degree assault, we recognized that Connecticut's definition of "dangerous instrument" requires "that the use of a 'substance' . . . be 'capable of causing death or serious physical injury,'" and thus, regardless of the injury requirement in the first-degree assault statute, the Connecticut definition of "'dangerous instrument' . . . satisfies the ACCA requirement that the predicate offense has as an element the use of physical force that is violent, as . . . *Johnson* requires." *Villanueva*, 893 F.3d at 129 (citing *Johnson*, 559 U.S. at 140).

We further conclude that the use or threatened use of "superior physical strength" to compel sexual contact satisfies the definition of a "crime of violence"

10

under 18 U.S.C. § 16(a). Kondjoua argues that, under Connecticut law, use or threatened use of "superior physical strength" is insufficient because Connecticut secures sexual assault convictions without proof of any physical violence but rather with proof of as little as an implied threat of physical force based solely on the strength of defendants. We disagree. Contrary to Kondjoua's suggestion, proof of actual physical violence is not required to satisfy the definition in § 16(a) given that threats of "force capable of causing physical pain or injury" are sufficient. *Johnson*, 559 U.S. at 140. Further, in *Stokeling*, the Supreme Court held, in the context of a Florida robbery statute, that "the force necessary to overcome a victim's physical resistance is inherently 'violent" in the sense contemplated by *Johnson*, and 'suggest[s] a degree of power that would not be satisfied by the merest touching.'" 139 S. Ct. at 553 (quoting *Johnson*, 559 U.S. at 139). The Supreme Court explained that "overpower[ing] a victim's will—even a feeble or weak-willed victim—necessarily involves a physical confrontation and struggle," and the Court noted that "[t]he altercation need not cause pain or injury or even be prolonged; it is the physical contest between the criminal and the victim that is itself capable of causing physical pain or injury." *Id.* (internal quotation marks omitted). The Connecticut cases that Kondjoua cites show that, as with the force

11

necessary to overcome physical resistance considered in *Stokeling*, the use or threatened use of "superior physical strength" to compel a victim to submit to sexual contact, as criminalized in Connecticut's third-degree sexual assault statute, necessarily involves the threatened use of physical power that is capable of causing physical pain or injury as required to satisfy § 16(a). *See id.*; *see also Johnson*, 559 U.S. at 140.

For example, in *State v. Mahon*, the defendants, two males aged 17 and 18, drove the victim, a 13-year-old female, to a field off a dirt road, after which one of the defendants positioned himself in front of her in the back seat to sexually assault her while the other defendant stood outside the only door on that side of the car and later reached into the car to pull down her pants when the defendant who was assaulting her was unable to do so. 97 Conn. App. 503, 505–07, 905 A.2d 678, 680–81, *cert. denied*, 280 Conn. 930, 909 A.2d 958 (2006). Both defendants had sexual intercourse with the victim. *Id.* at 507. The Connecticut Appellate Court held that there was sufficient evidence that both defendants used force in the assault, noting that the age and size of the two male defendants in comparison to the young victim, the isolated parking of the vehicle, and the one defendant's position blocking the door of the car "implied [a] threat of force." *Id.* at 512–14. The facts

12

in *Mahon* satisfy the definition of crime of violence in § 16(a) because they show that defendants placed their 13-year-old victim in a position where, to resist the sexual contact, she would have had to push an older man off of her and push the 17-year-old defendant away from the entrance of the vehicle he was blocking. *Id.* at 513–14. The defendants' actions thus threatened the victim with "a physical confrontation and struggle" should she not submit to their sexual contact. *Stokeling*, 139 S. Ct. at 553.

Nor are we convinced by Kondjoua's argument that *State v. Coleman*, 52 Conn. App. 466, 727 A.2d 246, *cert. denied*, 249 Conn. 902, 732 A.2d 776 (1999), establishes that Connecticut courts have held that disparity in size between a defendant and victim alone is sufficient to sustain a sexual assault conviction. The defendant in that case, aside from his significantly larger size, also entered the women's bathroom at a club where he was a security guard, confronted the victim who was weak and ill from alcohol, exerted force on the victim by pulling down her shorts and underwear, holding her shoulder, and pushing his body weight against her while sexually assaulting her. *See id.* at 467–68; *id.* at 470 ("[Victim] testified that the defendant used the '[f]orce of his strength'. . . . he 'braced [her] off in a way' and his body exerted pressure on her."). On the basis of that evidence,

13

the court held that the evidence was sufficient to conclude "that the defendant compelled sexual intercourse with the victim by the use of force." *Id.* at 471. Such compulsion plainly "overpower[s] a victim's will," *Stokeling*, 139 S. Ct. at 553, and thus qualifies as a "use of force" within the meaning of 18 U.S.C. § 16(a).

The remaining issue is whether the term "use of actual physical force" as defined by Connecticut law, satisfies the definition of a crime of violence under § 16(a). We hold that it does.

Kondjoua admits that, as with the requirements for a crime of violence under § 16(a), *see Johnson*, 559 U.S. at 139; *Leocal*, 543 U.S. at 11, Connecticut law requires force, or risk of force, beyond mere touching to establish "use of actual physical force" under CGS § 53a-65(7), *see State v. Hufford*, 205 Conn. 386, 393, 533 A.2d 866, 871 (1987); *State v. Juan C.*, 170 Conn. App. 185, 204, 154 A.3d 39, 50 (2017) ("[M]ere touching, in the absence of violence, physical coercion, or use of superior physical strength, is insufficient to prove that the defendant used force to compel the sexual intercourse."); *State v. Gagnon*, 18 Conn. App. 694, 698, 561 A.2d 129, 133 (1989) ("[T]o prove the use of force element the evidence must demonstrate either violence or some other form of physical coercion." (internal quotation marks omitted)). The Connecticut Supreme Court has stated that "sexual assault in the

14

third degree by use of force contemplates a will overborne by physical coercion."

*Hufford*, 205 Conn. at 393; *see also id.* at 394 ("It is clear that the legislature sought . . . to impose greater criminal liability upon a defendant who uses force, thereby risking additional harm to the sexual assault victim."). This mirrors the understanding of force articulated by the Supreme Court in *Stokeling*. *See* 139 S. Ct. at 553 ("Robbery that must overpower a victim's will—even a feeble or weak-willed victim—necessarily involves a physical confrontation and struggle . . . [I]t is the physical contest between the criminal and the victim that is itself capable of causing physical pain or injury." (quotation marks omitted)); *cf. Estremera v. United States*, 944 F.3d 452, 454–55 (2d Cir. 2019) (analogizing between *Stokeling*'s focus on "overpower[ing] a victim's will" and Connecticut robbery's requirement of "overcoming resistance" or "compelling" a victim to deliver property). Contrary to Kondjoua's contention, the implied threats of violent force criminalized under his statute of conviction satisfy the definition of crime of violence in § 16(a). *See United States v. Evans*, 924 F.3d 21, 29 (2d Cir. 2019) (providing that "a taking by intimidation involves the threat to use . . . force" (internal quotation marks and emphasis omitted)); *cf. United States v. Hill*, 890 F.3d 51, 59 (2d Cir. 2018) (concluding that "threatening the indirect application of physical force [can be]

15

sufficient to constitute the threatened use of physical force" because "[s]ome threats do not require specification of any particular means in order to be effective; yet they still threaten some type of violence and the application of some force." (emphases omitted)).

Kondjoua argues that the Connecticut Appellate Court's decision in *Gagnon* illustrates that the force punishable under CGS § 53a-72a(a)(1) does not satisfy the crime of violence definition in § 16(a) because it does not necessarily involve physical or violent force. In *Gagnon*, the defendant impersonated a police officer, forced the victim to pull her car over by using a flashing red light, told her he would not write her a ticket if she had sex with him, and then pinned her to her seat by grabbing her breasts tightly through the window. 18 Conn. App. at 696–97. The court found the defendant's actions sufficient to sustain a conviction under CGS § 53a-72a(a)(1) because the "the victim . . . was *illegally* rendered immobile as a result of the defendant's actions" when he "impersonat[ed] a police officer . . . to force the victim to pull her car off the road." *Id.* at 699. The Supreme Court has explained that "force capable of causing physical pain or injury" does not "require any particular degree of likelihood or probability that the force used will cause physical pain or injury; only potentiality." *Stokeling*, 139 S. Ct. at 554. And the

16

Court has "defined violence as unjust or improper force," *id.* at 553 (internal quotation marks and emphasis omitted), such as the force used against the victim in *Gagnon*. *See also Hill*, 890 F.3d at 60 (suggesting that "menacing conduct, as when a perpetrator wrongfully and intentionally use[s] an individual's reputation . . . to instill fear" is sufficient to establish the threat of physical force (internal quotation marks omitted)). Indeed, although we have concluded "that the use of a police badge alone [does not] necessarily impl[y] a threat of force," we have left open the possibility "that persons who purport, through objectively reasonable manifestations, to wield the state's coercive authority can . . . communicate a threat of force." *United States v. Santos*, 449 F.3d 93, 101 n.15 (2d Cir. 2006). The defendant in *Gagnon* did just that: he impersonated a police officer and used the apparent authority conferred by that subterfuge to physically divert the victim to the side of the road. Using the unique threat of authorized force in which police officers are cloaked to "cause[] the victim to stop her vehicle," *Gagnon*, 18 Conn. App. at 699, rises to the level of force required to "overcome a victim's resistance," *Stokeling*, 139 S. Ct. at 550 (quotation marks omitted). Therefore, the unjust and improper force used to render the victim in *Gagnon* immobile in order to compel sexual contact satisfies the crime of violence definition in § 16(a).

We reject Kondjoua's argument that *Gagnon* is indistinguishable from *United States v. Davis*, 875 F.3d 592, 600-03 (11th Cir. 2017), in which the Eleventh Circuit found that Alabama case law had diluted the physical force requirement in a state statute criminalizing sexual abuse by forcible compulsion such that the statute did not constitute a crime of violence under § 16(a). The Eleventh Circuit noted that Alabama courts had found sufficient to sustain a conviction "an implied threat of some sort of disciplinary action," where the victim is a child and the defendant is an authority figure in child's life, without evidence of express or implied threats of physical harm. *Id.* at 602. Unlike the defendant in *Davis*, the defendant in *Gagnon* did not rely solely on his position of authority to threaten disciplinary action to compel sexual contact with the victim; rather he used unjust authority to render the victim physically immobile before subjecting her to unwanted sexual contact. 18 Conn. App. at 696.

In sum, we conclude that CGS § 53a-72a(a)(1) necessarily includes as an element the use or threatened use of violent force and thus categorically constitutes a crime of violence as defined in 18 U.S.C. § 16(a).

**CONCLUSION**

For the foregoing reasons, the petition for review is DENIED. As we have completed our review, any stay of removal that the Court previously granted in this petition is VACATED and the pending motion for a stay of removal is DENIED as moot.